IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DUONG VAN LAM,<br><br>             Plaintiff,<br><br>     v.<br><br>MICHAEL J. ASTRUE<br><br>             Defendant. | Case No.: C-12-03977 JSC<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT; DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

In this Social Security case, Plaintiff Duong Van Lam seeks waiver of a $22,476.56 repayment of Supplemental Security Income ("SSI") benefits improperly made to him over a two-year period. Defendant Commissioner of the Social Security Administration ("Commissioner") has found Plaintiff at fault for the overpayment and therefore ineligible for waiver.  Pending before the Court are Plaintiff's Motion for Summary Judgment (Dkt. No. 12) and Defendant's Cross-Motion for Summary Judgment (Dkt. No. 14).  Plaintiff contends that the Administrative Law Judge ("ALJ") erred by failing to give sufficient consideration to various items of evidence, including Plaintiff's testimony and limited ability to understand the Social Security Administration's ("SSA") reporting requirements, in making the fault determination.

Based on the foregoing, the Court GRANTS Plaintiff's motion for summary judgment and DENIES Defendant's cross-motion for summary judgment.

**FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff Duong Van Lam is an 83-year-old Vietnamese immigrant who began receiving SSI benefits in December 1994. *See* Administrative Record ("AR") 12, 79. At the time Plaintiff began receiving SSI payments, his wife, Muoi Ngo, from whom he is now separated, worked as a cashier at a restaurant in San Francisco where she earned minimum wage. AR 68, 80. Ms. Ngo was subsequently promoted to the position of waitress in 2006 and began receiving tips in addition to earning minimum wage. AR 80. In 2009, the SSA issued a notice to Plaintiff informing him that he had been overpaid $22,476.56 in SSI benefits between May 2007 and June 2009 due to his wife's unreported increased earnings. *See* AR 17. Plaintiff requested waiver of the overpayment, stating that he was not at fault in causing the overpayment. AR 12. That request was denied by an SSA field officer after a personal conference. AR 12. Plaintiff then filed a request for reconsideration of the waiver determination, which was denied. AR 12. Thereafter, Plaintiff filed a request for hearing before an ALJ. AR 12.

In September 2010, Plaintiff, represented by counsel, appeared for his hearing before ALJ Benjamin F. Parks in San Francisco. AR 94-95. Ten days later, the ALJ issued a written decision holding that Plaintiff was overpaid benefits, was at fault in causing the overpayment, and was not entitled to any waiver of the repayment. *See* AR 12-15. After the SSA Appeals Council denied review, the ALJ's decision became the final decision of the Commissioner. *See* AR 3. Plaintiff then timely filed an appeal with the Court, seeking judicial review pursuant to 42 U.S.C. § 405(g). (Dkt. No. 1.) Both parties consented to proceed before a U.S. magistrate judge in accordance with 28 U.S.C. § 636(c). (Dkt. Nos. 3, 7.)

**I.   ALJ Hearing**

The Plaintiff, Ms. Ngo, and their adult daughter, Linda Lam, all testified before the ALJ. With the help of a translator, Plaintiff stated at the hearing that "whenever my wife receive [sic] her checks I would take the check stuff and brought [sic] it over there. And they told me that it would not affect my payment or my benefit." *See* AR 120. In response to the ALJ's question of why Plaintiff

1  did not report income after 2003, Plaintiff answered, "[w]ell, the reason why is because they
2  eventually, they did not send us any notice or paperwork and we didn't get to do it . . . unless if [sic]
3  they send us the paperwork we wouldn't know how or what to report." *See* AR 121. Plaintiff also
4  testified that the $760.50 he received in SSI benefits each month was his only source of income,
5  adding that his living expenses included spending $250 a month on rent and approximately $15 a day
6  on food. *See* AR 122. As Plaintiff explained, his other expenditures included "some expenses for
7  transportation" and "a few dollars here and there" for medication. *See* AR 122.

8        Ms. Ngo testified that she became a waitress in 2006, earning "an extra small amount of tips."
9  *See* AR 125. As she recounted, "I went back to work and the first two paycheck [sic] that - - the stub
10  of the pay check, I take it to my - - I copy and I give it to my husband who then took it to the slow
11  [Sloat] office of the Social Security Administration and they responded with a letter that saying that
12  my income alone would not affect his benefit." *See* AR 126. When the ALJ asked her whether she
13  received any letters from the SSA in 2007 or 2008, she responded that she had not, adding, "I just
14  want to make the statement that in 2003 and '4 I always receive [sic] a note that [sic] is saying to
15  report the incomes on my husband's benefit [sic]. Even the year when I was out of work and I was
16  getting benefit from the government we did the same thing. However, later on we're just not getting
17  notice anymore to do this kind of reporting." *See* AR 126.

18        Ms. Lam testified that since her father's payments have been reduced as a result of the SSA
19  withholding $80 to $100 a month due to the past overpayment, "most of the time he is not able to
20  make it all the way which is why I help out." *See* AR 129. As she explained, "I buy the groceries for
21  my dad which is why his expenses are really like $15 to $20 a meal because he only goes out for
22  lunch. And he cooks the rest of the meals at home and I buy the groceries which is [sic] usually about
23  anywhere from 100 to 200 a month depending on what his diet is or what's happening that month."
24  *See* AR 128. Ms. Lam also testified that while her father is "fairly healthy for his age," he had
25  suffered two heart attacks and had recently been diagnosed with diabetes. *See* AR 128.

26        Plaintiff's counsel, Matt Dirkes, added to the record that when Plaintiff "began receiving SSI
27  in 1994 . . . generally Social Security would send them a letter at the end of the year and asking for
28  her pay stubs [sic] . . . once she began earning tips [Ms. Lam] made a copy of her pay stub [sic] and

gave them to her husband who took them down to the sload [Sloat] office and he presented them to the staff there and asked whether that effected [sic] his payments.  And they said, 'No.  Based on these pay stubs and the new amount of tips she's receiving, that will not affect your payment.  If that changes in the future then let us know.  In 2007, 2008 they didn't receive any notice from Social Security so they didn't report her income as they had been in the past in response to the letters that they had received." AR 123-24.

At the hearing, Mr. Dirkes raised the issue of the overpayment amount in question.  As he described, Plaintiff received a notice in June 2009 with an accompanying table that "totaled all of the months beginning June 1, 2007 through June 1, 2009 despite the fact that some of those months are excluded under the listed months of overpayments" in the notice.  *See* AR 130.

## II.  ALJ Findings

The ALJ issued an adverse ruling against Plaintiff.  *See* AR 9.  The decision established that: (1) Plaintiff was overpaid $22,476.56 in benefits between May 2007 and June 2009; (2) Plaintiff was at fault in causing the overpayment; and (3) recovery of the overpayment was not waived.  *See* AR 14-15.  The ALJ concluded that "sufficient evidence of record . . . suppport[ed] a finding that the plaintiff knew of the income reporting requirements," deeming Plaintiff's "assertions that he was not aware of the income reporting requirements" to not be credible.  *See* AR 14.  The ALJ found Plaintiff's understanding of the income reporting requirements to be "demonstrated by the fact that he reported his wife's income for several years" before stopping the practice in 2003.  *See* AR 14.  Lastly, the ALJ rejected Plaintiff's testimony that he did not receive annual notices requiring him to report his income in 2007 and 2008, and instead concluded that Plaintiff did in fact receive yearly notices during this time.  *See* AR 14.

**STANDARD OF REVIEW**

The Court has authority to review the Commissioner's final decision under the substantial evidence standard.  *See* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ."); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).  The Court may overturn the Commissioner's refusal to waive repayment only if that decision is not supported by substantial evidence or is based on legal error.  *See*

4

*Albalos v. Sullivan*, 907 F.2d 871, 873 (9th Cir. 1990); *Anderson v. Sullivan*, 914 F.2d 1121, 1122-24 (9th Cir. 1990); *Harrison v. Heckler*, 746 F.2d 480, 481 (9th Cir. 1984). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 2000). The ALJ is responsible for determining credibility and resolving ambiguities. *See id.*; *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). The reviewing court is required to uphold the ALJ's decision "where the evidence is susceptible to more than one rational interpretation." *Andrews*, 53 F.3d at 1039-40. However, the ALJ's findings must be supported by specific, cogent reasons. *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir. 1981).

## LEGAL STANDARD

Section 1631(b)(1)(B) of the Social Security Act sets forth the requirements for waiver of a repayment of SSI benefits:

> The Commissioner of Social Security (i) shall make such provision as the Commissioner finds appropriate in the case of payment of more than the correct amount of benefits with respect to an individual with a view to avoiding penalizing such individual . . . who was without fault in connection with the overpayment, if adjustment or recovery on account of such overpayment in such case would defeat the purposes of this subchapter, or be against equity and good conscience, or (because of the small amount involved) impede efficient or effective administration of this subchapter . . . .

42 U.S.C. § 1383 (2010); *see also* 20 CFR § 416.550 (providing that waiver may be granted when "(a) [t]he overpaid individual was without fault in connection with an overpayment, and (b) [a]djustment or recovery of such overpayment would either: (1) [d]efeat the purpose of title XVI, or (2) [b]e against equity and good conscience, or (3) [i]mpede efficient or effective administration of title XVI due to the small amount involved."). Thus, in order to waive overpayment the SSA must find (1) that the claimant was without fault, and (2) that repayment would either defeat the purposes of the Social Security Act or would be against equity and good conscience. *See* 42 U.S.C. § 404(b) (2010); *Quinlivan v. Sullivan*, 916 F.2d 524, 526 (9th Cir. 1990).

A plaintiff is at fault for the overpayment if he or she (1) fails to furnish information which he or she knew or should have known was material; (2) makes a statement which he or she knew or

5

should have known to be incorrect; or (3) accepts a payment which he or she knew or could have been expected to know was incorrect. *See* 20 C.F.R. § 416.552; *McCarthy v. Apfel*, 221 F.3d 1119, 1126 (9th Cir. 2000). The plaintiff has the burden of proving that he was without fault. *Anderson*, 914 F.2d at 1122 (1990).

The fault inquiry is "highly subjective, highly individualized, and highly dependent on the interaction between the intentions and state of mind of the [plaintiff] and the peculiar circumstances of his situation." *Elliott v. Weinberger*, 564 F.2d 1219, 1233 (9th Cir. 1977) *aff'd in part, rev'd in part on other grounds sub nom. Califano v. Yamasaki*, 442 U.S. 682 (1979). To determine whether a plaintiff is at fault, the SSA must take into account "all the pertinent circumstances surrounding the overpayment" and consider any "physical, mental, educational, or linguistic limitations (including any lack of facility with the English language) the individual may have" in a particular case. 20 C.F.R. § 416.552. In other words, the "fault determination requires a reasonable person to be viewed in the claimant's own circumstances and with whatever mental and physical limitations the claimant might have." *Harrison*, 746 F.2d at 482.

The second part of the waiver analysis is met if recovery of overpayments would either defeat the purpose of the Social Security Act or be against equity and good conscience. 42 U.S.C. § 404(b); *see Lewin*, 654 F.2d at 632 n. 1; *McCarthy*, 221 F.3d at 1122; *Pickman v. Astrue*, 2009 WL 2216144, *3 (N.D. Cal. July 23, 2009); *Garcia v. Shalala*, 1993 WL 515734, *3 (N.D. Cal. Dec. 1, 1993). Recovery of overpayment defeats the purpose of the program if the benefits are "needed for ordinary and necessary living expenses." 20 C.F.R. § 416.553; *Harrison*, 746 F.2d at 483. Recovery is also considered to be against equity and good conscience "if an individual changed his or her position for the worse or relinquished a valuable right because of reliance upon a notice that payment would be made or because of the incorrect payment itself." 20 C.F.R. § 416.554. However, the phrase "equity and good conscience" is not limited to the three specific situations outlined by the SSA regulations and instead requires the Court to "draw upon precepts of justice and morality" in determining whether waiver is warranted. *Fremont v. Sullivan*, 959 F.2d 240 (9th Cir. 1992) (internal quotation marks and citation omitted). "Congress intended a broad concept of fairness to apply to waiver requests, one that

1 reflects the ordinary meaning of the statutory language and takes into account the facts and
2 circumstances of each case." *Quinlivan*, 916 F.2d at 526.

## DISCUSSION

**I.   Whether Plaintiff was Without Fault**

The parties' dispute centers on whether substantial evidence supported the ALJ's fault determination. Plaintiff argues that the ALJ wrongly dismissed uncontroverted evidence that he was unaware of SSA reporting requirements. (Dkt. No. 12 at 5.) In addition, Plaintiff argues that the ALJ failed to engage in the "highly subjective, highly individualized" assessment required to determine whether the Plaintiff properly understood the SSA reporting requirements. (*Id.* at 8.) Specifically, Plaintiff claims that his limited ability to speak or read English, lack of formal education, and advanced age prevented him from gaining such an understanding. (*Id.*) In response, Defendant asserts that Plaintiff simply disagrees with the ALJ's decision without pointing to any countervailing evidence that detracts from that opinion. (Dkt. No. 14 at 4.)

The ALJ's finding that Plaintiff was aware of the reporting requirements and therefore at fault for the repayment—in other words, that plaintiff failed to furnish information which he knew or should have known to be material, *see* 20 C.F.R. § 416.552—was not supported by substantial evidence. The ALJ reasoned that Plaintiff's assertions regarding his awareness of the reporting requirements were not credible because:

> Having received Supplemental Security Income (SSI) since 1994, he is experienced with the program. Despite a limited education and ability to communicate in English, the claimant's understanding of the income reporting requirements is demonstrated by the fact that he reported his wife's income for several years and then stopped the practice in 2003. Contrary to his testimony that he did not receive notice that he was required to continue to report income in 2007 and 2008, the claimant received annual notices of cost of living increases that specifically indicate that he is required to report any change in his situation that may affect his SSI, including changes in income for him or members of his household. He was at fault for failing to continue to report without notice that he did not need to continue to report and is therefore at fault in causing the overpayment.

*See* AR 14.

As an initial matter, the ALJ may not, as he did here, rely on items not in the record in making the fault determination. *See Vallejo v. Astrue*, 2011 WL 2925647, at *9 (E.D. Cal. July 15, 2011)

7

(concluding that the ALJ cannot rely on a "hypothetical notice that is absent from the record" to discredit plaintiff's testimony); *Albalos*, 907 F. 2d at 874 (finding that "the ALJ did not base his decision purely on evidence in the record" and instead improperly relied on a letter explaining penalties for failing to file earnings that was not in evidence); *Garcia*, 1993 WL 515734 at *3 (holding that the ALJ's reliance on notices received by the plaintiff was "erroneous" because the items were not in the record). Specifically, the ALJ summarily concluded, without explaining the basis for doing so, that Plaintiff received letters requiring documentation of income in 2007 and 2008. *See* AR 14. Plaintiff and his wife testified to the contrary. *See* AR 120-21 (responding to the ALJ's question of why he did not report income after 2003, Plaintiff answered that the SSA did "not send us any notice or paperwork"), 126 ("Q: And in 2007 or 2008 did you receive any further letters from Social Security? . . . [Ms. Ngo]: No."). Thus, as the only proffered ground for denying Plaintiff's testimony that he stopped receiving requests for income documentation is not contained within the record, this aspect of the ALJ's opinion cannot be taken into account in determining whether substantial evidence supported the ALJ's finding that Plaintiff was aware of the reporting requirements.

Further, the ALJ's statement that "[Plaintiff's] understanding of the income reporting requirements is demonstrated by the fact that he reported his wife's income for several years and then stopped the practice in 2003," AR 14, is unresponsive to Plaintiff's testimony that he stopped reporting his wife's income in 2003 because the SSA stopped sending him letters telling him to do so, *see* AR 120-21.

The ALJ also appeared to identify an additional inconsistency, noting that "[a]t the hearing, the claimant stated that he did not know about the requirements to report income. However, he also testified that he went to field offices on Sloat Boulevard and Taraval Street with his wife's check stubs after he received a letter from the Social Security Administration." *See* AR 14. This observation is open to two possible interpretations. The first is that the ALJ is simply repeating his reasoning, quoted above, that Plaintiff's assertion that he did not know the reporting requirements is incredible. That is, Plaintiff had a history of providing his wife's check stubs to the SSA following receipt of an SSA letter, so Plaintiff's failure to continue that same course of conduct is unexcused.

8

Under this interpretation, the ALJ's reasoning fails for the same reason just discussed: it fails to address Plaintiff's testimony that he stopped reporting his wife's income once the SSA stopped sending him letters.

Alternatively, the second reading of the ALJ's statement is the argument set forth by Defendant, that Plaintiff did an "about face" by claiming that he only knew of the reporting requirements based on the annual notices he received in the mail, but still reported his wife's increased income to the Sloat office in 2006 even after he allegedly stopped receiving the notices. (*See* Dkt. No. 14 at 4-5.) However, it is perfectly plausible and logically consistent that Plaintiff responded to the reporting requests he received between 1994 and 2003, stopped reporting his income after 2003 when he did not receive reporting requests from the SSA, but then reported his wife's increased earnings without prompting in 2006 "out of an abundance of caution." (*See* Dkt. No. 1 at 2.) Although Plaintiff may know SSA requirements concerning increased household income, it does not follow that Plaintiff knows SSA requirements regarding yearly reporting even absent a notification letter.

Further, the ALJ did not explicitly discredit Plaintiff's account that he was told at the Sloat office that his wife's increased earnings did not affect his SSI benefits and that he need not continue to report his wife's earnings unless the couple's financial situation changed further. *See* AR 120-21, 123-126. While it is true that the ALJ made the general statement that Plaintiff's "assertions that he was not aware of the income reporting requirements are not credible," the precise reasons for this conclusion are not made clear. *See* AR 14. For example, did the ALJ wholly discredit Plaintiff's statement about what he was allegedly told by SSA officials, or were Plaintiff's statements assumed to be true but given no weight because of the contradictory assertion that the couple continued to receive letters requesting documentation during the period of overpayment?

This ambiguity requires a finding against Defendant because "[a]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision." *See Lewin,* 654 F.2d at 634-35 (criticizing the "hearing examiner for submitting a four-page summary of the evidence followed by cursory findings

9

of fact without explicit statements as to what portions of the evidence he accepted or rejected") (internal citations and quotation marks omitted); *Pickman*, 2009 WL 2216144 at 3 ("It is incumbent upon the examiner to make specific findings.") (internal citations and quotation marks omitted).

When the credibility of the plaintiff is a "critical factor" in the ALJ's decision, as it is here, the rejection of a plaintiff's testimony must be supported by a "specific, cogent" justification. *See Lewin*, 654 F.2d at 635; *Albalos*, 907 F.2d at 874. While the ALJ is "free to disregard self-serving statements that cannot be verified," *Anderson*, 914 F.2d at 1124, binding Ninth Circuit precedent still requires that the ALJ articulate clear and cogent reasons for refusing to give weight to evidence corroborating a plaintiff's position. *See Lewin*, 654 F.2d at 634-35 (stating that a plaintiff's testimony "must be considered seriously without being entirely discounted because of weak (or no) objective findings. Further, rejection of the testimony must be accompanied by a specific finding to that effect, supported by a specific, cogent reason for the disbelief.") (internal quotation marks omitted); *Albalos*, 907 F.2d at 873-74 (reversing the district court because the adverse credibility determination was not supported by "full and detailed findings of fact" or a clear articulation of why the plaintiff should be disbelieved); *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990) (requiring "an explicit credibility finding whenever the claimant's credibility is a critical factor in the [ALJ's] determination"); *Waddell v. Astrue*, 2008 WL 2620513, *2 (C.D. Cal. July 2, 2008) (stating that the Ninth Circuit has rejected the argument that the reviewing court can rely on "reasons, unspecified in the ALJ's decision" for discrediting a witnesses' evidence).

The ALJ's failure to articulate a clear and cogent reason or identify evidence disproving Plaintiff's claim regarding the nature of his conversation at the Sloat field office ultimately means that the ALJ decision cannot stand. *See*, *e.g.*, *Lewin*, 654 F.2d at 635; *Albalos*, 907 F.2d at 873-74. "If reliance has been placed on one portion of the record to the disregard of overwhelming evidence to the contrary, the reviewing court must decide against the [Commissioner]." *Harrison*, 746 F.2d at 483. The ALJ "cannot arbitrarily assume that the plaintiff understood the Act's application to his particular situation . . . in the face of directly contradictory evidence." *Lewin*, 654 F.2d at 636.

In a case that is factually similar to the instant action, the Ninth Circuit in *Lewin* found that the ALJ's determination that the plaintiff was at fault for overpayment could not be sustained because the

10

ALJ "cannot arbitrarily assume that the plaintiff understood the Act's application to his particular situation . . . in the face of directly contradictory evidence." *See* 654 F.2d at 636. Lewin claimed that she reasonably relied on erroneous information provided by an SSA official; specifically, she testified that she called the SSA multiple times and visited a local field office to verify that her benefit level was correct, and was told that it was. *Id.* The court rejected the adverse credibility determination by the ALJ refuting plaintiff's account because there was a "total absence of contradictory evidence" undermining the witnesses' claims. *Id.*

As the Plaintiff here, the plaintiff in *Garcia* claimed that he was told by an SSI representative that the additional income he sought to report would not affect his benefits. *See Garcia*, 1993 WL 515734 at *3; AR 100. In *Garcia*, the court determined that the ALJ had failed to fully consider the plaintiff's individual understanding of the reporting requirements. *See Garcia*, 1993 WL 515734 at *3. The court concluded that the plaintiff had demonstrated a "good faith reliance on his interpretation of the prior SSI explanation" and his confusion regarding the SSA reporting requirements was reasonable in light of the circumstances. *See id.* As in *Garcia*, where the court concluded that the plaintiff "did not try to conceal the proceeds from SSI, but rather reported them at the time he felt was appropriate," the Plaintiff here took the affirmative step of reporting his wife's increased earnings to the Sloat field office, an action that demonstrates his "efforts to comply with the reporting requirements" and must be taken into account when making the fault determination. *See id.*; 20 C.F.R. § 416.552; AR 81-82.

What the ALJ's decision also fails to consider is that what a plaintiff "should have known to be material" requires that the ALJ consider a particular plaintiff's understanding of the reporting requirements and efforts to comply with those requirements in making the fault determination. *See* 20 C.F.R. § 416.552 (providing that the fault determination "depends on all of the circumstances in the particular case," including a plaintiff's efforts to comply with the reporting requirements). To the extent the ALJ ruled that Plaintiff should have understood that the SSA required him to report his wife's income even in the absence of annual letters telling him to do so, Plaintiff's old age, limited English proficiency, and low-level of formal education do not support such an advanced understanding of SSA requirements. While a person in circumstances different from Plaintiff perhaps

11

should have known that he or she was required to report income even without receiving the typical annual notice, the ALJ failed to explain why *Plaintiff*—an 83-year-old Vietnamese immigrant who does not understand English—should have known about the requirements.  In addition, given what Plaintiff claims he was told by SSA officials at the Sloat office, it is reasonable for him to have understood, as of the 2006 visit, the reporting requirements to mean that he needed to provide additional income documentation only if his wife's earnings changed in the future or if he received a letter from the SSA as he had in the past.  *See Califano*, 442 U.S. at 685 ("A recipient who justifiably relied upon erroneous information from an official source within the Social Security Administration would be 'without fault.'").

## II. Whether Repayment Would Defeat the Purpose of the SSI Program or Be Against Equity and Good Conscience

As Plaintiff testified before the ALJ, his only source of income is the $760.50 he receives in SSI benefits each month.  *See* AR 122.  This amount, which has been reduced by $80 to $100 a month to cover the amount Plaintiff owes as a result of the overpayment, is not enough to cover his ordinary and necessary living expenses.  *See* AR 128-29.  Plaintiff's daughter testified that the reduction in payments has left Plaintiff unable to pay for his groceries, requiring her to spend $100 to $200 a month to cover these costs.  *Id.*  Because Plaintiff relies on the full amount of SSI benefits for ordinary and necessary living expenses, recovery of the overpayment would defeat the purpose of the SSI program.  *See*, *e.g.*, *Harrison*, 746 F.2d at 483 ("Recovery of an overpayment will be deemed to defeat the purpose of the program if the recipient's income is needed for ordinary and necessary living expenses . . . .").[1]

## CONCLUSION

For the reasons set forth above, substantial evidence did not support the ALJ's finding of fault.  *See Albalos*, 907 F.2d at 873; *McCarthy*, 221 F.3d at 1124.  Further, requiring repayment would defeat the purpose of the SSI program.  Accordingly, Plaintiff's motion for summary judgment is GRANTED and Defendant's cross-motion for summary judgment is DENIED.

---

[1] Because the Court reverses the ALJ's decision, the Court need not address Plaintiff's argument that the repayment amount was miscalculated.

The Court has discretion in determining whether to reverse or remand a social security case. *See Lewin,* 654 F.2d at 635–36; *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000); *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989). "If additional proceedings can remedy defects in the original administrative proceedings," the case should be remanded. *Lewin*, 654 F.2d at 635. Where the record has been thoroughly developed, however, a remand is not warranted. *Id.* In *Lewin*, for example, the court deemed reversal appropriate because the ALJ had "neither expressly discredit[ed] Lewin's testimony nor articulate[d] any reasons for questioning her credibility" and determined that a rehearing would not serve to cure these fundamental flaws with the ALJ's decision. *Id.* Here, a remand for further proceedings is similarly unwarranted because the record has been fully developed and a "rehearing would simply delay receipt of benefits." *Id.* Reversal is also necessary because the ALJ's implicit, adverse credibility determination against Plaintiff's account of the instructions he received from SSA officials at the Sloat office is not supported by cogent reasons or substantial evidence. *Id.* The same holds true of the ALJ's unsupported conclusion that Plaintiff received letters requiring him to report his wife's income during the period of overpayment. *See* AR 14.

IT IS SO ORDERED.

Dated: August 14, 2013

_____
JACQUELINE SCOTT CORLEY
UNITED STATES MAGISTRATE JUDGE

13